UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-272-GWU

JAMES ROGER HOSKINS,                                                  PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

James Hoskins brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

     Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

  One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

08-272  James Roger Hoskins

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-272 James Roger Hoskins

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-272 James Roger Hoskins

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Hoskins, a 37-year-old former coal miner with a high school education, suffered from impairments related to being status post anterior cervical discectomy and fusion at C6-C7 and chronic pain syndrome. (Tr. 16, 18). Prior to January 22, 2007, the plaintiff was found to be restricted to less than a full range of sedentary level work and totally disabled. (Tr. 17-19). The ALJ determined that as of January 23, 2007, the claimant experienced medical improvement and could then perform a restricted range of light level work, which would still preclude his past relevant work. (Tr. 19, 22). Based upon application of Rule 203.29, the ALJ found that a finding of not disabled was mandated for this time period. (Tr. 23).

After review of the evidence presented, the undersigned concludes that the unfavorable portion of the administrative decision is not supported by substantial evidence for several reasons. However, the current record also does not mandate an immediate award of DIB. Therefore, the court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

The ALJ erred in relying upon the Medical-Vocational Guidelines in this action. Rule 203.29 would apply to one restricted to <u>medium</u> level work while the ALJ in this action clearly limited Hoskins to light level work during the pertinent time period. (Tr. 19). The undersigned assumes that this was a typographical error and

7

that Rule 202.21, which applies to persons of the plaintiff's age, work background and educational level, was the rule intended. Since a finding of not disabled would also be mandated, this typographical error was harmless.  However, a more serious problem concerns the fact that the ALJ did not find that the plaintiff could perform the full range of light level work but identified several non-exertional limitations. Among the restrictions noted were a limited ability to reach overhead, an inability to more than occasionally kneel, crouch, crawl, or climb ladders, ropes or scaffolds, and a need to avoid exposure to body vibrations and hazards.  (Id.).  These numerous non-exertional restrictions could have a significant effect on the job base available to the plaintiff.  Therefore, the testimony of a vocational expert was required.

The ALJ erred in evaluating Hoskins' physical condition.  As previously noted, the ALJ concluded that until January 22, 2007, the plaintiff's physical impairments restricted him to performing less than a full range of sedentary level work but that medical improvement occurred which allowed him to perform light level work after this date.  The ALJ based this finding upon the opinion of Dr. James Bean, the plaintiff's treating neurosurgeon. (Id.). On January 22, 2007, Dr. Bean reported that x-rays showed good alignment of the interbody graft at C6-C7 and with progressive fusion.  (Tr. 393).  The doctor stated that "he will hopefully be able to look at employment again in the future . . . ."  (Id.).  While this statement certainly indicates medical improvement, the undersigned notes that it is also somewhat speculative

as to his ability to return to employment. Dr. Bean does not specifically state that the claimant can now perform the full range of light level work. Theoretically, the claimant could experience medical improvement without now being able to perform the full range of light level work. Thus, this opinion does not necessarily support the ALJ's physical findings.

The specific physical restrictions ultimately found by the ALJ as being pertinent to the relevant time period after January 22, 2007 were those noted by Dr. Carlos Hernandez, a non-examining medical reviewer. (Tr. 382-389). Dr. Hernandez saw the record in October of 2006. (Tr. 389). Thus, the doctor's opinion is based upon a review of evidence obtained during a time frame when the ALJ himself considered Hoskins to be far more restricted than indicated by the reviewer and to be totally disabled. Dr. Hernandez did not have the opportunity to see and comment upon the later evidence from Dr. Bean dated after October, 2006 which indicates medical improvement. Under these circumstances, reliance upon the reviewer would appear improper.

The ALJ also erred in evaluating the evidence relating to Hoskins' mental condition. Dr. P.D. Patel examined the plaintiff in March of 2007 and indicated that he would have a "poor" ability to handle detailed instructions, maintain attention and concentration, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday or work week, perform at a consistent pace, respond appropriately to changes in the work setting and set realistic goals or make

plans independently of others. (Tr. 470-471). This opinion clearly indicates a fairly significant mental problem. The staff at the Kentucky River Comprehensive Care Center diagnosed a major depression and panic disorder. (Tr. 467). Specific mental limitations were not assessed but the claimant's Global Assessment of Functioning (GAF) was rated at 45. (Id.). Such a GAF suggests the existence of "serious" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. The ALJ rejected these opinions in part because the examiners based them on subjective complaints. However, the Sixth Circuit Court of Appeals, citing Poulin v. Bowen, 817 F.2d 865 (D.C. Cir. 1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness . . . . When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

Blankenship v. Bowen, 874 F.2d 1116, 1121, (6th Cir. 1989). The court notes that Dr. Patel and the Kentucky River staff were the only mental health professionals to evaluate Hoskins' mental condition. The ALJ impermissibly substituted his own lay

08-272 James Roger Hoskins

opinion for those of the mental health professionals. Under these circumstances, the ALJ should at least have sought the advice of a medical advisor. Therefore, substantial evidence also does not support this portion of the administrative decision.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion to this extent and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of June, 2009.

Signed By:

_G. Wix Unthank_ *GWU*

**United States Senior Judge**